opinion. Van Fossan, Judge: In this case petitioner seeks relief under section 722 (b) (4) because of a change in its capacity for production or operation consummated during and after the base period. The taxable years are 1941, 1942, 1943, and 1945, the years 1940 and 1944 being involved only by reason of petitioner’s claim of unused excess profits credit carryovers and carrybacks. Petitioner’s actual average base period net income was approximately $64,000. In determining petitioner’s excess profits tax liability for the taxable years, respondent used an average base period net income' of approximately $102,000, computed under the “growth formula” in section 713 (f). In its applications for relief, petitioner claimed a constructive average base period net income of approximately $134,000. In its proposed findings and brief, petitioner contends for a figure of approximately $148,000. The evidence establishes that petitioner changed its capacity for production or operation during the base period, within the meaning of section 722 (b) (4). Petitioner increased its button presses from 3 at January 1, 1936, to 16 at December 31, 1939, and had 6 additional presses on order at the latter date. During the base period petitioner also acquired a 3-story building in 1936 and a 2-story building in 1938, thus substantially increasing the size of its plant during such period. On these facts we are of the opinion that petitioner has established a qualifying factor. In its quest for relief, petitioner’s chief burden is the establishment of a fair and just amount that can be used as a constructive average base period net income, in excess of the average base period net income computed by respondent under section 713 (f). Petitioner’s basic contention here is that it is entitled to apply the push-back rule. As a first step, it seeks to establish the net income it would have realized in. 1939 if it had been operating 22 button presses (16 plus 6 on order at December 31, 1939) 2 years before. Pointing to the net profit per press of $6,833 realized in 1939 on the average number of presses operated in that year, petitioner contends that, if it had been operating 22 presses in 1939, it would have realized a net income of approximately $150,000 ($6,833X22). Petitioner then backcast this net income using indices computed from wholesale sales of the wearing apparel industry, postulating that 1939 sales equal 100. The fallacy in petitioner’s reconstruction is twofold. The parallelism of the wearing apparel industry is not proved. Nor has satisfactory evidence been adduced that the increased production from its increased capacity could have been sold. In other words, it does not appear in the record that there was an existing demand in the market for such an increase in buttons, or that a demand could have been created which would have absorbed such increased production. The evidence establishes an existing demand for a fart of petitioner’s increased capacity, that part being represented by the purchases and sales of Colt buttons. Had Connecticut purchased all its buttons from petitioner instead of a part thereof from Colt during 1936,1937, and 1938, petitioner’s aggregate gross sales for such years would have increased approximately $300,000, and its average excess profits net income for the base period would have increased about $16,000. Adding the assumed $16,000 increase over actual average base period net income of $64,000 with the resulting figure of $80,000, is no help to petitioner in securing relief under section 722. It is still less than the average base period net income computed by the Commissioner under section 713 (f). There is opinion evidence in the record to the effect that petitioner could have sold some additional buttons (over and above Colt purchases), if it had been able to supply Connecticut with a complete line of buttons, but no persuasive estimate of the amount of this demand is to be found in the record. Assuming, arguendo, that such additional demand would result in additional sales during the base period of another $300,000, with the further increase in average excess profits net income for the base period of another $16,000, nevertheless, petitioner would derive no benefit under section 722 because the reconstruction of earnings at $96,000 is still less than the $102,000 computed by respondent under section 713 (f). It is our opinion, therefore, that any reconstruction justified by this record will fall short of the average base period net income computed by respondent under the provisions of section 713 (f). Respondent is sustained. Reviewed by the Special Division. Decision will be entered for the respondent.